UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICKY APODACA, | ) | 1:08-CV-00414 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| ROBERT HOREL, | ) | TO ENTER JUDGMENT |
| | ) | |
| Respondent. | ) | ORDER DECLINING ISSUANCE OF |
| | ) | CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY

Petitioner is currently incarcerated at Pelican Bay State Prison in Crescent City, California. (Pet. at 1). Petitioner's custody arose from a judgement of the Merced County Superior Court. (Id). Petitioner was convicted in June 2005 of first degree murder with the special circumstances of robbery (Cal. Penal Code §§ 187, 190.2(a)(A). (Pet. Ex. A at 1). The jury further found Petitioner had intentionally and personally discharged a firearm (Cal. Penal Code § 12022.53(d)), had personally used a firearm in the commission of the murder (Cal. Penal Code § 12022.5(a)), and had committed the murder during the commission of a robbery (Cal. Penal Code §§ 211(a), 212.5). Petitioner was sentenced to life without the possibility of parole plus consecutive sentences of twenty five years for violating California Penal Code section 12022.53(d) and ten years for violating California Penal Code section 12022.5(a).

Petitioner appealed his conviction to the California Court of Appeal, Fifth District. (Answer at 3; Pet. at 3). The Court of Appeal issued a reasoned opinion on February 21, 2007, affirming Petitioner's conviction and modifying Petitioner's sentence by striking the ten year consecutive

sentence. (Answer at 3; Pet. Ex. A).

Petitioner subsequently sought review in the California Supreme Court. (Pet. at 3). The California Supreme Court summarily denied the petition for review. (Pet. Ex. B).

Petitioner filed the instant petition for writ of habeas corpus with the federal court on March 21, 2008.[1] Respondent filed an answer on July 17, 2008, responding to the grounds for relief set forth in the petition.

Consent to Magistrate Judge Jurisdiction

On April 4, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of the final judgment. (Court Doc. 4).

On May 12, 2008, Respondent also consented to the jurisdiction of a magistrate judge. (Court Doc. 7).

On May 4, 2009, the case was reassigned to the undersigned for all further proceedings. (Court Doc. 13).

## FACTUAL BACKGROUND[2]

On the morning of July 16, 2003, at approximately 5:45 a.m., Keith Gooding drove his Silverado pickup truck to the 7-11 located on Loughborough Drive in Merced for coffee. This was Gooding's normal daily routine. After purchasing his coffee, Gooding would drive to his business, arriving at approximately 6:00 a.m. to open his shop. On the same morning, Malcolm Person was clerking at the 7-11. Person was familiar with Gooding, who was a regular customer. Person also knew Apodaca by name and knew Apodaca's family. The morning of July 16, Apodaca came into the store shortly after Gooding. When Gooding was outside the store talking on his cell phone, Apodaca told Person that he was going to "jack" Gooding. Apodaca leaned forward and made a motion as if pulling the trigger on a gun. Person saw Apodaca get into the truck with Gooding and drive away.

Gooding never arrived at his business that morning. Later, his body was found near his pickup. He had been shot in the head. (Two spent .22-caliber shell casings were found in or near the truck.) Gooding's wallet was in the truck, but his driver's license and an estimated several hundred dollars were gone from the wallet. The last phone call made on Gooding's cell phone was at 5:48 a.m. that morning and lasted for seven minutes. Several witnesses said they saw the pickup truck on the side of the

---

[1] Respondent admits that the petition is timely and Respondent does not allege that Petitioner has failed to exhaust his state remedies. (*See* Answer at 2-3).

[2] The factual background is derived from the factual summary set forth in the unpublished opinion of the California Court of Appeal, Fifth District. A determination of fact made by a state court is presumed correct, pursuant to 28 U.S.C. §§ 2254(e)(1), and must be rebutted by the petitioner with clearly and convincing evidence.

road where it was abandoned and saw someone they identified as Apodaca standing or walking near the truck.

Other witnesses said they saw someone near the truck who did not look like Apodaca. One said that none of the individuals in a photo lineup that contained Apodaca's picture was the man he saw, although he admitted he would not recognize the man he had seen. Another said the man she observed was 40-50 years old and had black hair with white streaks, a description that did not match Apodaca. Yet another witness saw a man with a bicycle who was picking up cans.

When Person returned to work four days later, he learned that Gooding had been killed. He went to police and told them what he had seen. Police reviewed the video tape from the store's surveillance system. It confirmed Person's story. In addition, the defense presented evidence that using the process of photogrammetry, the individual portrayed on the video image appeared to be between 5 feet 11 inches and 6 feet 1 inch tall, while Apodaca is 5 feet 9 and 15/16 inches tall.

On July 21, when Apodaca was interviewed by investigating officers, he was limping because of a cut on his hip. Later, it was determined that the cut was most likely a bullet wound that could have occurred as many as five days earlier. Apodaca told a nurse at the Merced County Jail that he suffered a gun shot wound on July 16.

During the investigation, a recording from a telephone answering machine was seized from Apodaca's home. The tape contained statements by Apodaca directing that, "if somebody checks outta my momma's, detectives try to talk to her," his mother was to "tell the truth" and "tell them I was at home asleep" on "Wednesday morning at six o'clock."

A business owner who owned a business near Gooding's said that he believed he saw Gooding the morning of July 16 around 6:20 a.m., having an argument on his cell phone with someone for about 15 minutes and then drive off with tires squealing. This witness could not state positively that this occurred on July 16.

Apodaca's girlfriend testified that she, Apodaca, and some others drove to Vacaville on July 15 in the late evening and did not return to Merced until around 6:00 a.m. on the 16th. According to her, when they returned, the group dropped Apodaca and another person off at Apodaca's house.

(Pet. Ex. A at 2-4).

## DISCUSSION

**I.      Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner's custody arose from a judgment of the Merced County Superior Court, which is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in the district court where Petitioner was sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

**II.     ADEPA Standard of Review**

In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions, which became effective upon its enactment on April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

As Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction). Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.*

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant

the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.   Review of Petitioner's Claim**

Petitioner sets forth six grounds for relief in his petition for writ of habeas corpus. In Grounds One, Two, and Three, Petitioner challenges the admissibility of certain evidence by the trial court as violative of his right to a fair trial. In Grounds Four, Five, and Six, Petitioner contends that the Sixth Amendment rights were violated by the trial court's denial of his motion to substitute counsel, permitted under *People v. Marsden*, 2 Cal.3d 118 (Cal. 1970).

### A.      Grounds One,[3] Two and Three: Admission of McClain's Testimony

Petitioner contends that the trial court's admission of certain evidence deprived him of his right to a fair trial. Petitioner specifically challenges the testimony by Detective McClain identifying Petitioner as the individual in the surveillance photographs and his testimony as to the veracity of a Malcolm Person's statement.

Petitioner presented this claim to both the California Court of Appeal and the California Supreme Court. The Court of Appeal was the only state court to issue a reasoned opinion in Petitioner's case. When reviewing a state court's summary denial, the Court "look[s] through" the summary disposition to the last reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated Petitioner's claim for the same reasons cited by the California Court of Appeal in their reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. at 803.

It is not the province of this court to inquire into whether the evidence was correctly admitted pursuant to California law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (finding that since evidence of prior injury was relevant to an issue in the case, the petitioner's due process rights were not violated by the admission of such evidence). Thus, the only question before this Court is whether the trial court's admission of such evidence rendered the trial so fundamentally unfair as to violate Petitioner's right to due process of the law under the Fourteenth Amendment. *See* 28 U.S.C. 2254(a); *see also Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (quoting *Windham v. Merkle*, 163 F.3 1092, 1103 (9th Cir. 1998) in stating "review of evidentiary rulings is confined to 'determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process'").

---

[3] Petitioner contends in his first ground for relief that the "evidence used to convict Petitioner of a murder he is innocent of constitutes a miscarriage of justice." (Pet. at 5). Petitioner goes on to explain that absent the identification by Malcolm Person, there was "absolutely no evidence, physical or otherwise," incriminating Petitioner. It is unclear what Petitioner is challenging in Ground One as he does not set forth a violation of his federal constitutional rights. If Petitioner is challenging the sufficiency of the evidence against him, this claim was never presented to the California Supreme Court and is thus unexhausted. Consequently, the Court construes this claim to be similar to Grounds Two and Three, which both challenge the admission evidence under the Due Process Clause.

The trial court's admission of evidence violates a criminal defendant due process rights only where the evidence "is so unduly prejudicial that it renders the trial fundamentally unfair," *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), and "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal quotation marks and citations omitted). The California Court of Appeal concluded that the admission of such evidence was not unduly prejudicial, stating that:

> First, the evidence was not offered as lay opinion testimony on the issue of Person's truthfulness, but to explain McClain's actions in eliminating Person as a potential suspect-an issue raised by the defense. McClain did not testify that he believed Person was a truthful witness, but that Person's story matched what McClain had observed in the videotape, and this was why Person was eliminated as a suspect.
> Second, the jury was admonished immediately after the challenged testimony that they alone were to determine who was truthful and who was not. Later, the jury was instructed again that it was the sole judge of the believability of a witness. The court instructed the jury that its consideration of McClain's testimony was limited; we presume the jurors followed this directive. ( People v. Guerra (2006) 37 Cal.4th 1067, 1115.)
> Finally, based on the strong evidence of guilt, there is no reasonable probability that McClain's testimony affected the verdict, even if it was improper to admit it. (See People v. Melton (1988) 44 Cal.3d 713, 745, applying Watson standard of review.) The jury saw the same video McClain observed. It was free to conclude whether the person in the video was Apodaca and whether Person's story matched what was depicted in the video. The jury was instructed that it was not bound by opinion evidence and could disregard any opinion evidence it found unreasonable. If the jury believed the individual in the video did not resemble Apodaca or that Person's story was not confirmed by the video, it would have rejected McClain's opinion to the contrary. There was ample incriminating evidence besides McClain's testimony before the jury, including the video surveillance tapes themselves, Person's own testimony, and the testimony of other witnesses suggesting that Apodaca was at the scene of the murder. The most damaging evidence was Apodaca's own attempt to fabricate an alibi for the time frame in which the murder occurred. Given this evidence, the verdict would not have been more favorable to Apodaca even if the challenged evidence had been excluded. ( People v. Watson, supra, 46 Cal.2d at p. 836.)

(Pet. Ex. A at 9-10).

The Court does not find this conclusion to be an unreasonable application of clearly established Federal law. The state appellate court correctly notes that Detective McClain's testimony regarding the truthfulness of Malcolm Person was relevant as the main thrust of the defense seems to have been to attack the credibility of Person and the failure of the police to investigate Person as a viable suspect was brought up in trial counsel's cross examination of Detective McClain and in closing arguments. (RT, Vol. IV at 742-751, Vol. V at 1113-1116). Additionally, the appellate court

noted that such testimony was offset by the court's curative instruction to the jury that they were to be the sole judge of the Person's truthfulness. Furthermore, the admission of Detective McClain's testimony that Petitioner was the person in the photographs could not have been unduly prejudicial in light of the availability of the photographs to the jury. The fact that Detective McClain identified Petitioner would not have either precluded or hindered the jury from forming their own conclusions as to whether Petitioner was the same person photographed in the picture. In light of these circumstances, the admission of such evidence does not violate fundamental conceptions of justice; nor was the admission of this evidence unduly prejudicial. Therefore, the Court does not find that the State court's decision was contrary to or an unreasonable application of clearly established federal law.

### B.     *Grounds Four, Five, and Six: Denial of Marsden Motion*

Petitioner's last three grounds for relief allege various reasons why the trial court's denial of his motion to substitute counsel was erroneous. In Ground Four, Petitioner argues that the trial court's denial of his motion to remove appointed counsel violated his rights under the Sixth Amendment of the United States Constitution. (Pet. at 6-A). In Ground Five, Petitioner contends that "the trial court erred when it denied Pet[itioner]'s *Marsden* motion based on 'the courts' unverified belief that Pet[itioner] waived his right to testify." (Pet. at 6-B). As his sixth ground for relief, Petitioner claims that the trial court erred in denying the motion without obtaining Petitioner's reasons for seeking new counsel and an explanation from counsel. (Id). Petitioner raised these claims to the California Court of Appeal and the California Supreme Court respectively. As the Court of Appeal was the only state court to issue a reasoned opinion, the Court presumes that the California Supreme Court's summary denial was based on the same reasoning offered by the appellate court. *See Ylst v. Nunnemaker*, 501 U.S. at 803.

The Court initially notes that even if erroneous, the trial court's denial of Petitioner's motion to substitute counsel is a ground for habeas relief only where it violates Petitioner's constitutional rights. *See* 28 U.S.C. § 2254(a). The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is therefore a cognizable claim for federal habeas relief as "it is well established and clear that the Sixth Amendment requires on the record an

appropriate inquiry into the grounds for such a motion, and that the matter be resolved before the case goes forward." *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). The ultimate question before the federal habeas court is whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id*. at 1026. The Ninth Circuit has explained further that "[t]he test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed." *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (citing *United States v. Moore*, 159 F.3d 1154, 1159 n. 3 (9th Cir. 1998)). Thus, this Court must consider: "(1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel." *Id*. at 1197-1198 (citing *Moore*, 159 F.3d at 1158-1159).

In *Schell*, the Ninth Circuit noted that "it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for [a motion for new counsel], and that the matter be resolved on the merits before the case goes forward." *Id*. at 1025 (citing *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991). Thus, the *Schell* court found that an evidentiary hearing was appropriate as the state court did not conducted an inquiry into how far the relationship between counsel and the petitioner had deteriorated, whether the petitioner himself had sabotaged the relationship, or whether the petitioner had failed to make reasonable efforts to develop the relationship with counsel. *Id*. at 1207 (citing *Crandell v. Bunnell*, 114 F.3d 1213, 1217-1218 (9th Cir. 1998). Unlike in *Schell* and contrary to Petitioner's allegation in Ground Six, the trial court here conducted an appropriate inquiry into Petitioner's *Marsden* motion. (*See* Lod. Doc. 18). Specifically, the trial court asked Petitioner about his motivation for substituting counsel to which Petitioner provided two reasons–namely a disagreement about whether Petitioner would testify at trial and counsel's failure to call certain witnesses. The court then queried further about the disagreement regarding Petitioner's testimony; to which Petitioner responded that counsel advised him against testifying in his own defense but a decision regarding whether Petitioner would testify

was never reached. (Id. at 3). The trial court asked Petitioner which witnesses Petitioner would like to have called and then asked Petitioner's trial counsel for his response to Petitioner's complaints. (Id. at 4). The trial court thus conducted an appropriate inquiry into the extent of the conflict between Petitioner and his trial counsel. *See Stephens v. Lambert*, 504 F.3d 873, 886-887 (9th Cir. 2007); *but cf United States v. Nguyen*, 262 F.3d 998, 1003-1004 (9th Cir. 2001) (finding that criminal defendant's Sixth Amendment right is violated where the trial judge focused exclusively on the attorney's competence and refused to consider the attorney-client relationship). Here, the court's inquiry adequately explored the dispute between Petitioner and his counsel. In the documents submitted to this Court, Petitioner has failed to allege any additional facts which would have been brought out by further inquiries by the trial court. Additionally, there were no compelling reasons to explore further as the extent of the conflict centered around issues had already passed–specifically, Petitioner's motion did not occur until after the guilt phase had concluded and Petitioner's dispute with counsel stemmed from a disagreement about whether to call certain witnesses and whether Petitioner would testify in his own defense. *See United States v. Gonzales*, 268 F.3d 772, 777-779 (9th Cir. 2001) (finding that district court violated the defendant's Sixth Amendment right where the court asked only open ended question and did not make a meaningful attempt to probe more deeply into the defendant's relationship with appointed counsel despite compelling reasons to delve deeper).

Subsequently, the California Court of Appeal found that Petitioner's "vague allegations at most reflect a difference of opinion over trial tactics and some generalized complaints regarding counsel's performance. They fall short of specific facts showing a deterioration of the attorney-client relationship or inadequate representation." (Pet. Ex. A at 5). After reviewing the transcript of the *Marsden* hearing, the Court does not find this conclusion to be an unreasonable application of clearly establish Federal law. Petitioner has failed to demonstrate that the extent of the conflict "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026; *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Not every disagreement between a petitioner and his trial counsel implicates the Sixth Amendment as the Sixth Amendment guarantees effective assistance of counsel, not necessarily a "meaningful relationship"

between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see also Schell*, 218 F.3d at 1027. Here, Petitioner does not allege that his counsel was hostile or that communication between the two had disintegrated such that he was denied access to information regarding his defense. *See Schell*, 218 F.3d at 1026-1027. Rather, the only conflict were disagreements as to trial tactics regarding the testimony of certain witnesses and whether it was prudent for Petitioner to testify. *See Larson*, 515 F.3d at 1067 (no relief under AEDPA where petitioner's complaint consisted of lack of communication with counsel and counsel's strategic decisions). Furthermore, the timing of the motion, which occurred after the jury had reached a verdict, indicates Petitioner's motion may have been motivated by displeasure with the result rather than an actual conflict. Accordingly, Petitioner's constitutional rights were not violated and he is not entitled to habeas corpus relief on this claim.

## IV. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a

certificate of appealability.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   May 13, 2009**                             /s/ John M. Dixon
                                                              UNITED STATES MAGISTRATE JUDGE